OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Zalud Oldsmobile, Inc., Appellant, v. Limbach, Tax Commr., Appellee.
[Cite as Zalud Oldsmobile, Inc. v. Limbach (1994), Ohio St.3d .]
Taxation -- Personal property tax -- Automobile dealer's demonstrator motor vehicles not included in average monthly inventory calculations for personal property tax purposes.
(No. 92-2379 -- Submitted December 15, 1993 -- Decided March 23, 1994.)
Appeal from the Board of Tax Appeals, No. 90-M-510.
Zalud Oldsmobile, Inc. ("Zalud"), appellant, appeals the affirmance of the Tax Commissioner's, appellee's, order that included for personal property tax purposes automobiles, for which it had obtained certificates of title and individual registration, in its taxable inventory.

Zalud sells, leases, and services new and used vehicles. Zalud receives a manufacturer's certificate of origin ("MCO") for all new cars it is sent. The MCO certifies that the manufacturer owns the new vehicle described in the MCO and has transferred it on the date indicated in the MCO. Zalud displays these automobiles strictly for sale and obtains generic dealers' plates for them when it allows a customer to test drive the vehicle.

For selected automobiles, Zalud presents the MCO to a clerk of courts and obtains a certificate of title and, from a deputy registrar, registration that is specifically for the automobile. Zalud assigns these automobiles to salesmen and other company employees for their personal transportation. Zalud calls these automobiles "demonstrators."

In Zalud's financing arrangements, it pays off a portion of the principal for the demonstrators, which is contrary to making the interest-only payments for the rest of the new automobiles. Zalud also pays higher insurance premiums for the demonstrators because they are operated on the road. Zalud, nevertheless, will sell these demonstrators just as it will any other automobile it holds. However, Zalud usually receives a lower price for the demonstrators, since they typically have

more miles on them than the remainder of the inventory.

The manufacturer provides a full warranty for the demonstrators if Zalud sells them before Zalud drives them 6,000 miles or holds them six months. Thus, when these cars near this mileage or this time, Zalud parks them with the other automobiles offered for sale and places the individually registered plates in its safe. It can transfer the registration to another demonstrator after it has sold the previously registered demonstrator.

For tax years 1987 and 1988, Zalud included the display automobiles in its inventory for personal property tax purposes but did not include the demonstrators. The commissioner audited these returns and included the demonstrators in the calculations. Zalud appealed to the Board of Tax Appeals ("BTA"), which affirmed the commissioner's order. The BTA found that Zalud held the demonstrators for sale, was not an "owner" for tax purposes of the demonstrators, and must include the demonstrators in the average monthly inventory calculations.

The cause is before this court upon an appeal as of right.

Baker & Hostetler, Edward J. Bernert, George H. Boerger and Sharon A. Jennings; Whann & Associates, Keith E. Whann and J.F. McKirahan, for appellant.

Lee I. Fisher, Attorney General, and James C. Sauer, Assistant Attorney General, for appellee.

Per Curiam. Zalud maintains that motor vehicles that are individually registered in the name of a dealer and operated on public streets by its employees are not defined as "personal property" under R.C. 5701.03, and that it need not include them in calculating its inventory's average monthly value. The Tax Commissioner, to the contrary, contends that R.C. 4501.01(V) defines Zalud to be a "dealer" and not an "owner" of the automobile and that R.C. 5701.03 defines the vehicles as "personal property." We agree with Zalud and reverse the BTA's decision.

R.C. 5711.15 requires a merchant to estimate the value of personal property held for sale as of tax lien date by averaging his month-end inventory values. Former R.C. 5701.03 defined "personal property":

"As used in Title LVII [57] of the Revised Code, 'personal property' includes every tangible thing which is the subject of ownership, whether animate or inanimate, other than * * * motor vehicles registered by the owner thereof. * * *" (Emphasis added.)

According to Taxicabs of Cincinnati, Inc. v. Peck (1954), 161 Ohio St. 508, 53 O.O. 378, 120 N.E.2d 86, paragraph one of the syllabus, under R.C. 5701.03 and 4503.04, motor vehicles registered by the owners thereof are not subject to the personal property tax. Moreover, these statutes provide for motor vehicle license fees on each passenger car for the privilege of operating it on the highways of the state. According to former R.C. 4503.04, which sets forth the fees for registering motor vehicles:

"Taxes at the rates provided in this section are in lieu of all taxes on or with respect to the ownership of such motor vehicles, except as provided in section 4503.06 [tax on

manufactured homes] of the Revised Code."

R.C. 4503.10(A) requires "every owner of a motor vehicle and every person mentioned as owner in the last certificate of title, bill of sale, or sworn statement of ownership of a motor vehicle which is operated or driven upon the public roads or highways [to] cause to be filed each year * * * a written application * * * for registration for the following registration year * * *."

R.C. 4501.01(V) defines "owner," for motor vehicle laws, as:

"[A]ny person, firm, or corporation other than a manufacturer or dealer having title to a motor vehicle, except that in sections 4505.01 to 4505.19 of the Revised Code, it includes in addition manufacturers and dealers."

R.C. Chapter 4505 provides for motor vehicle certificates of title. R.C. 4505.04 states:

"(A) No person acquiring a motor vehicle from its owner, whether the owner is a manufacturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until such person has had issued to him a certificate of title to the motor vehicle, or delivered to him a manufacturer's or importer's certificate for it * * *.

"(B) * * * no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:

"(1) By a certificate of title, [or] a manufacturer's or importer's certificate * * *."

Thus, an owner of a motor vehicle must obtain evidence of title and register the motor vehicle if the owner intends to operate the motor vehicle on public highways. This title and registration requirement includes dealers if they expect to operate the vehicle on public highways in addition to allowing prospective buyers to test drive the vehicle. This is so because R.C. 4503.30 states that dealer's plates, provided by R.C. 4503.27, may be displayed by the dealer when demonstrating the car for sale or lease, but may not be displayed when such cars are being used for delivery, hauling, transporting, or other commercial purpose. Consequently, Zalud had to obtain a certificate of title and register the demonstrators so that its employees could drive them for their personal transportation. See Maumee v. Prebeg (M.C. 1974), 41 Ohio Misc. 52, 70 O.O. 2d 111, 322 N.E. 2d 380 (daughter of dealer's employee convicted of operating a motor vehicle on public roads without proper registration when operating vehicle displaying dealer's plates).

The instant case is distinguishable from Trailer Mart, Inc. v. Bowers (1955), 164 Ohio St. 354, 58 O.O. 135, 130 N.E.2d 793, cited for support by the commissioner. In Trailer Mart, a dealer in house trailers obtained certificates of title and registration for all the vehicles it sold. It failed to include these vehicles in its average inventory. The court declared that a dealer could not be the owner of these vehicles. Foremost, the court concluded that the language of former R.C. 4503.04, declaring that the registration tax was in lieu of all taxes concerning ownership, did not include the tax on motor homes because such tax was excepted from that statute.

In this case, Zalud did not title and register all its inventory as Trailer Mart did; it titled and registered only those vehicles used by its employees as demonstrators. Zalud does not attempt to avoid the tax on all its inventory as Trailer Mart did.

Furthermore, this case is different from Marc Lance Ford, Inc. v. Porterfield (1969), 18 Ohio St.2d 219, 47 O.O. 2d 448, 248 N.E.2d 618. In Marc Lance Ford, the dealer excluded from the inventory calculations automobiles that it had removed from its new car inventory and used as demonstrators and official's cars, as here. However, unlike this case, Marc Lance Ford operated those demonstrators with dealer's plates issued under R.C. 4503.27. We concluded that these code provisions providing for dealer's plates did not provide for registration of any specific vehicle. Here, Zalud had titled and individually registered the contested vehicles; it did not operate these vehicles under generic dealer's plates.

The definition of "owner" for the motor vehicle laws does muddle whether these demonstrators are to be included as personal property. An "owner" is one who has title to a motor vehicle other than a manufacturer or dealer, except that in the certificate of title law, "owner" includes, in addition, manufacturers and dealers. R.C. 4501.01(V). On the one hand, as the commissioner argues, a dealer is not an owner. On the other hand, as Zalud argues, a dealer can obtain a certificate of title to a motor vehicle and be an owner. As the motor vehicle statutes require, however, a dealer which allows its employees to operate motor vehicles on public highways, other than to display them for sale, must obtain certificates of title and registration for the vehicles.

In the last analysis, the statutes defining whether the disputed motor vehicles are personal property are unclear. When we find statutes defining subjects of taxation to be ambiguous, we resolve the ambiguity in favor of the taxpayer. B.F. Goodrich Co. v. Peck (1954), 161 Ohio St. 202, 53 O.O. 91, 118 N.E.2d 525, paragraph three of the syllabus. Under this principle, the disputed motor vehicles should not be defined as "personal property" and should not be included in the inventory calculations.

Accordingly, we reverse the decision of the BTA and hold that the demonstrator motor vehicles were not taxable personal property.

Decision reversed.

Moyer, C.J., A.W. Sweeney, Douglas, Wright, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.